IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| JAMES F. FARMER, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-14-02584 |
| STATE OF MARYLAND, ET AL., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

<u>MEMORDANDUM OPINION</u>

This is a civil rights action brought by Plaintiff James Farmer ("Farmer") against Michael Leishear ("Leishear") and Joseph Casper ("Casper") (collectively, "Defendants") for purported violations of 42 U.S.C. § 1983, Article 40 of the Maryland Declaration of Rights, and various state torts arising from Farmer's ejection from the District Court of Maryland for St. Mary's County on July 18, 2013 by Leishear. This Memorandum and accompanying Order address Defendants' Motion to Dismiss, ECF No. 24, as well as Farmer's Motion to Defer Ruling on Defendants' Motion Pending Discovery, ECF No. 31. A hearing is not necessary. *See* Loc. R. 105.6 (Md.). For the reasons stated below, Defendants' Motion to Dismiss is GRANTED, in part, and DENIED, in part, and Farmer's Motion to Defer Ruling on Defendants' Motion Pending Discovery is DENIED.

I.  BACKGROUND

Farmer is a licensed attorney in Maryland. *See* ECF No. 20 at ¶ 7. On July 18, 2013, Farmer was in the District Court of Maryland for St. Mary's County representing a client who was charged with criminal violations. *See id.* at ¶ 13. Prior to the start of the court's proceedings, Farmer was engaged in preliminary discussions with Assistant State's Attorney Michael Kane

1

("ASA Kane") and Trooper First Class Dustin Brill ("TFC Brill") regarding Farmer's client's case. *See id.* at ¶ 14. Farmer alleges that he told ASA Kane that the State lacked probable cause to prosecute his client and that the charges should never have been brought. *See id.* The Courtroom Bailiff, Leishear, overheard the conversation and allegedly told Farmer to "shut up." *See id.* at ¶ 17. Shortly thereafter, Farmer left the courtroom for a brief period of time, but ultimately returned to speak with Leishear. *See id.* at ¶ 19. During that conversation, Farmer claims to have informed Leishear that he was representing his client when he was previously speaking with ASA Kane. *See id.* Farmer alleges that it was during this exchange that Leishear grabbed him by the arm, shoved him, and told him to leave the courtroom, whereupon Leishear instructed three state police officers to escort Farmer from the building. *See id.* at ¶ 20. As a result of these actions, Farmer filed the instant lawsuit against Leishear for assault and battery, as well as for violating his state and federal constitutional rights. Farmer has also sued Leishear's supervisor, Caspar, for his alleged failure to supervise and train Leishear.

## II. STANDARD OF REVIEW

Defendants have moved to dismiss Farmer's amended complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). "'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Generally, when ruling on a 12(b)(6) motion, the court

assumes that the facts alleged in the complaint are true and draws all reasonable factual inferences in the nonmoving party's favor. *Edwards*, 178 F.3d at 244. A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

### III.   DISCUSSION

#### A.   Federal Claims

##### 1.   Section 1983 – First Amendment

Count I of Farmer's amended complaint involves an alleged violation of 42 U.S.C. § 1983 by Leishear. The gist of Farmer's claim is that Leishear chilled Farmer's First Amendment right to free speech by retaliating against him for engaging in protected speech while speaking with ASA Kane and TFC Brill during pre-court proceedings on July 18, 2013. *See* ECF No. 20 at ¶¶ 35-40. It is well settled that "[t]he First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Accordingly, the Fourth Circuit has held that a First Amendment retaliation claim brought under 42 U.S.C. § 1983 must include three elements:

> First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between [the] speech and the defendant's retaliatory action.

*Id.* (internal citations omitted). Here, the Court concludes that Farmer has adequately pled these three elements.

First, Farmer has adequately alleged that he was engaged in protected speech when he was talking to ASA Kane and TFC Brill prior to the commencement of the court's proceedings on July 18, 2013. Although Defendants rely on affidavits signed by ASA Kane and TFC Brill to suggest that Farmer's speech was "loud" and "belligerent" and therefore unprotected (*see* ECF Nos. 24-2 at ¶¶ 2-3 & 24-3 at ¶¶ 2-3), the Court cannot consider these affidavits when ruling on Defendants' motion to dismiss. *See Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007) (recognizing that a court, ordinarily, "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss").

Rather, the Court is limited to the allegations contained in the amended complaint, which sufficiently allege that Farmer was engaged in protected speech when he was talking to ASA Kane and TFC Brill prior to the July 18, 2013 court proceeding.

Concerning the second element – that Leishear's alleged retaliatory action adversely affected Farmer's constitutionally protected speech – the key inquiry is "whether a similarly situated person of 'ordinary firmness' reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006). "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez*, 202 F.3d at 686. In light of these factors, particularly Leishear's status as a courtroom bailiff, Farmer's status as a private attorney seeking to represent his client in a criminal proceeding, and the nature in which Farmer was removed from the courthouse by policemen, the Court concludes that Farmer's allegations plausibly suggest that a similarly situated person of "ordinary firmness" would be chilled by Leishear's

conduct and the consequences thereof. Specifically, by having Farmer forcibly removed from court by policemen prior to the commencement of his client's criminal proceeding, Leishear created a situation that inhibited Farmer's exercise of his First Amendment rights. As such, the Court concludes that Farmer has adequately alleged that Leishear's conduct adversely affected Farmer's constitutionally protected right to free speech.

Finally, the Court concludes that Farmer has adequately alleged a causal link between his speech and Leishear's allegedly retaliatory action. The Court will therefore deny Leishear's motion to dismiss Farmer's § 1983 claim against him. In doing so, the Court notes that, at this stage of the proceeding, it cannot conclude that Leishear is protected by absolute quasi-judicial immunity, as he argues. *See* ECF No. 24-1 at 12-15[1]. "Absolute quasi-judicial immunity derives from absolute judicial immunity." *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994). Judges are absolutely immune from suit for money damages when they act in their judicial capacity, unless their actions are "taken in the complete absence of all jurisdiction." *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). A judge's absolute immunity extends to public officials for "'acts they are specifically required to do under court order or at a judge's direction.'" *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994) (quoting *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988)). Like other officials, bailiffs enjoy absolute quasi-judicial immunity for actions "specifically ordered by the trial judge and related to the judicial function." *Id.* Viewing the allegations in the light most favorable to Farmer, the Court cannot conclude that Leishear was specifically ordered by the trial judge of the District Court of Maryland for St. Mary's County to forcibly remove Farmer from the court on July 18, 2013. Rather, it appears from the amended complaint that Leishear ordered Farmer removed from the courtroom on his

---

[1] For the citations to page numbers in this Memorandum Opinion, the Court uses the page numbers assigned to the document from CM/ECF or PACER.

own volition, without the trial judge's order to do so. Under these circumstances, the Court cannot conclude that Leishear is protected by absolute quasi-judicial immunity. *See Battle v. Whitehurst*, 831 F. Supp. 522, 528 (E.D. Va. 1993) *aff'd*, 36 F.3d 1091 (4th Cir. 1994) ("Court clerks . . . are accorded derivative absolute immunity when they act in obedience to judicial order or under the court's direction.").

     Nor can the Court conclude, at this stage of the proceeding, that Leishear is protected under qualified immunity. Qualified immunity affords a government official protection from suits for monetary damages when the official has acted in good faith. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). This brand of immunity is "an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (internal quotation marks omitted); *see also Harlow*, 457 U.S. at 818. The doctrine is intended to apply to "gray areas, where the law is unsettled or murky," rather than situations where the government actors were "plainly incompetent or . . . knowingly violate[d] the law." *Occupy Columbia*, 738 F.3d at 118.

     The Fourth Circuit articulated the relevant test for qualified immunity in *Pritchett v. Alford*, 973 F.2d 307 (4th Cir. 1992). In ruling on a defense of qualified immunity, a court must (1) identify "the specific right allegedly violated"; (2) determine "whether at the time of the alleged violation the right was clearly established"; and (3) if so, then decide "whether a reasonable person in the officer's position would have known that doing what he did would violate that right." *Pritchett*, 973 F.2d at 312. The first two criteria are pure questions of law to be resolved by the court. *See id.* The third criterion, which requires an evaluation of the objective

reasonableness of the conduct in question, may necessitate the resolution of disputed factual issues surrounding the conduct. *See id.* For example, "[i]n instances where there is a material dispute over what the defendant did, and under the plaintiff's version of the events the defendant would have, but under the defendant's version of events he would not have, violated clearly established law, it may be that the qualified immunity question cannot be resolved without discovery." *DiMeglio v. Haines*, 45 F.3d 790, 795 (4th Cir. 1995). This case presents such a situation.

Specifically, Leishear argues that he "was reasonably performing his duties as bailiff and asking [Farmer] to calm down from his belligerent behavior of screaming and yelling at TFC Brill." ECF No. 24-1 at 25. This argument, however, relies on facts contained in affidavits from ASA Kane and TFC Brill. *See* ECF Nos. 24-2 at ¶¶ 2-3 and 24-3 at ¶¶ 2-3. At this stage of the proceeding, however, the Court is limited to the allegations contained in the amended complaint, which allege that Leishear, "without provocation" "forcefully grabbed Farmer by the arm, shoved [him] and told him to leave the courtroom." ECF No. 20 at ¶ 19. To credit Leishear's argument at this stage would be to disregard the allegations contained in the amended complaint, which the Court is not permitted to do. As such, the Court cannot yet conclude that Leishear is entitled to qualified immunity. *See Smith v. Mothershed*, No. 12-3215, 2013 WL 4501310, at *3 (D. Md. Aug. 21, 2013) (denying motion to dismiss based on qualified immunity where the parties dispute the reasonableness of the officer's conduct). If, however, discovery ultimately supports the statements contained in ASA Kane's and TFC's Brill's affidavits – namely, that Leishear's conduct was in response to Farmer's disorderly conduct – the Court would be hard-

pressed to find Leishear's conduct not protected by qualified immunity. At this stage, however, the Court must deny Defendants' motion to dismiss Farmer's § 1983 claim against Leishear.[2]

## 2. Section 1983 - Failure to Train & Supervise

Count II of Farmer's amended complaint alleges a claim under 42 U.S.C. § 1983 against Caspar for his alleged failure to adequately train and supervise Leishear. *See* ECF No. 20 at ¶¶ 41-48. The doctrines of vicarious liability and respondeat superior, however, are generally not applicable in § 1983 actions. *See Vinnedge v. Gibbs*, 550 F.2d 926, 927-99 (4th Cir. 1977); *see also Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 691 (1978). Supervisory officials may be held liable only in certain circumstances for the constitutional injuries inflicted by their subordinates. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)). Supervisory liability is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 798 (quoting *Slakan*, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Id.* (citation omitted).

To establish supervisory liability under § 1983, a plaintiff must adequately allege: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the

---

[2] Because Article 40 of the Maryland Declaration of Rights is generally construed in *pari material* with the First Amendment of the Federal Constitution, the Court will decline to dismiss Count III of Farmer's amended complaint, which raises a retaliation claim against Leishear for violating of Article 40 of the Maryland Declaration of Rights. *See Nefedro v. Montgomery Cnty.*, 996 A.2d 850, 855 n. 5 (Md. 2010); *see also WBAL–TV Div., Hearst Corp. v. State*, 477 A.2d 776, 781 n. 4 (Md. 1984).

plaintiff; 2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and 3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw*, 13 F.3d at 799. Farmer has not adequately alleged facts which would support any of these three elements.

First, Farmer has not adequately alleged that Caspar had "actual or constructive knowledge" that Leishear was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury. *Id.* At most, Farmer alleges in a conclusory fashion that "Defendant Caspar has had actual or constructive knowledge of Defendant Leishear's reckless and assaultive behavior." ECF No. 20 at ¶ 28. But this is a legal conclusion. Farmer must allege *facts* that support this conclusion and he has not done so. *See. e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions).

Specifically, Farmer has not alleged any facts that demonstrate *how* Caspar had actual knowledge of Leishear's allegedly "reckless and assaultive behavior." He has not alleged that Caspar was present at the July 18, 2013 court proceeding or that he was otherwise aware of the events that transpired on that date. Instead, Farmer suggests that Caspar had constructive knowledge of Leishear's "reckless and assaultive behavior" because, at some unspecified date and time, Leishear ejected another courtroom attendee from the courtroom from whispering in court. *See* ECF No. 20 at ¶ 27. Again, however, Farmer does not allege that Caspar was aware, either directly or indirectly, of this incident. Nor has he even alleged that Caspar was Leishear's supervisor at the time of this event. As such, Farmer has failed to adequately allege that Caspar

9

had actual or constructive knowledge that Leishear was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury. *See Shaw*, 13 F.3d at 799.[3]

Second, Farmer has not adequately alleged that Caspar's response to Leishear's behavior was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices." *See Shaw*, 13 F.3d at 799. "Deliberate indifference is more than negligence." *Pearson v. Simms*, 345 F. Supp. 2d 515, 521 (D. Md. 2003) *aff'd*, 88 F. App'x 639 (4th Cir. 2004). As one court explained:

> Generally, a failure to supervise gives rise to a § 1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel. A single act or isolated incident are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability.

*Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (citations and footnote omitted); *see e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 (1970) (custom denotes "persistent and widespread . . . practices"); *Knight v. Carlson*, 478 F.Supp. 55, 58 (E.D. Cal. 1979) (custom denotes "settled governmental practice or '[d]eeply embedded traditional ways of carrying out [government] policy'"). At most, Farmer identifies one other incident involving Leishear that occurred at some unspecified time. *See* ECF No. 20 at ¶ 27. This does not amount to a "history of widespread abuse' by Leishear (or anyone else) from which to impute knowledge to Caspar. *See Chin v. City of Baltimore*, 241 F.Supp.2d 546, 549 (D. Md. 2003) (finding in the § 1983 context that an alleged single incident of police misconduct is insufficient for stating a claim based on a government custom or policy).

---

[3] Farmer also attempts to support his §1983 claim against Caspar by referencing actions taken by another bailiff, Francis Patterson, that Caspar allegedly "sanctioned or condoned." ECF No. 20 at ¶ 28. These allegations, however, are not relevant to Farmer's § 1983 claim against Caspar, which specifically challenges Caspar's alleged failure to train or supervise *Leishear*.

Even if the exact number incidents is an issue of proof and not necessarily determinative at the pleading stage (see *Price v. City of Fayetteville, N.C.*, 22 F. Supp. 3d 551, 563-64 (E.D.N.C. 2014), the amended complaint, nevertheless, contains no factual allegations, like those in *Price*, from which the Court could infer that Caspar, by his own actions, sanctioned or condoned a practice which led to the alleged violation of Farmer's constitutional rights. Indeed, Farmer only alleges generally that Caspar failed to train or supervise Leishear and that this failure was the result of gross negligence or malice towards Farmer. ECF No. 20 at ¶¶ 29, 32. This is not enough to allege "deliberate indifference." Thus, Farmer has failed to allege a viable failure to train or supervise claim against Caspar. *See Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984) (upholding the district court's dismissal of a plaintiff's *Monell* claim where the complaint alleged only that the City was " 'grossly negligent' in failing adequately to train its personnel and that this exhibited 'callous disregard' for [the plaintiff]'s constitutional rights"); *Jackson v. Brickey*, 771 F.Supp.2d 593, 597-98, 604 (W.D. Va. 2011) (concluding that a plaintiff's allegations of "institution-wide failure to train . . . and . . . deliberate[ ] indifferen[ce] to Constitutional rights" constituted "naked assertion[s] devoid of further factual enhancement" that were "not entitled to the assumption of truth"); *Ross v. Prince George's Cnty.*, No. 11-1984, 2012 WL 1204087, at *9 (D. Md. Apr. 10, 2012) (dismissing plaintiff's *Monell* claim because the complaint "merely state[d] in conclusory terms that the County failed 'to adequately train and supervise officers in the proper use of force' and that it 'consistently failed' to investigate, discipline, and record acts of excessive force").

Finally, Farmer has not adequately alleged an "affirmative causal link" between Caspar's alleged inaction and Farmer's injury. *See Shaw*, 13 F.3d at 799. Again, all that Farmer alleges in this regard is that "as a direct and proximate result of Caspar's failure to train and supervise

Leishear, Leishear violated Farmer's First Amendment rights to Freedom of Speech and Association and caused Farmer to suffer an unwanted and unjustified touching." ECF No. 20 at ¶ 47. This, however, is not enough to state a claim for failure to train or supervise under §1983, which requires "specific allegations connecting conduct by [Caspar] to [Farmer's] alleged constitutional deprivation . . . ." *Adams v. Univ. of Md. at Coll. Park*, No. 00-3177, 2001 WL 333095, at *4 (D. Md. March 6, 2001) ("Absent specific allegations connecting conduct by [the supervisory official] to Plaintiff's alleged constitutional deprivation, the Court must dismiss [the § 1983] claim [for] . . . lack of detail."). The Court will therefore dismiss Farmer's § 1983 claim against Caspar without prejudice to his right to amend his complaint to cure the deficiencies identified herein, if he can do so.

    **B.**    **State Law Claims**

Counts IV and V of Farmer's amended complaint allege that Leishear assaulted and battered him. *See* ECF No. 20 at ¶¶ 53-63. Additionally, Count VI alleges that Caspar failed to adequately supervise or train Leishear in violation of state law. *See id.* at ¶¶ 64-68. Defendants have moved to dismiss these claims on the basis that they are protected by state personnel liability pursuant to § 5–522(b) of the Maryland Tort Claims Act ("MTCA").

Under Section 5-522(b) of the MTCA, state personnel are immune from liability "for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence." Md.Code, § 5-522(b). For purposes of MTCA immunity, "malice" refers to so-called "actual malice," *i.e.*, "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Lee v. Cline*, 384 Md. 245, 268 (Md. 2004). Gross negligence means "'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any

effort to avoid them." *Newell v. Runnels*, 407 Md. 578, 638 (Md. 2009). Put another way, gross negligence is found when a State employee is so "utterly indifferent to the rights of others that he acts as if such rights did not exist." *Barbre v. Pope*, 402 Md. 157, 187 (2007) (citation omitted). "[S]tate personnel are not immune from suit and liability in tort when the plaintiff's complaint *sufficiently* alleges malice or gross negligence." *Id.* at 181-82. (emphasis in original).

Accepting as true the allegations in Farmer's amended complaint, the Court finds that Farmer has adequately alleged gross negligence as to Leishear. Specifically, Farmer alleges that on July 18, 2013 during a conversation in the District Court of Maryland for St. Mary's County, without provocation, "Leishear, aggressively . . . [and] forcefully grabbed Farmer by the arm, shoved [him] and told him to leave the courtroom." ECF No. 20 at ¶ 19. Then, as Farmer was leaving the courtroom, "Leishear, without provocation from Farmer, aggressively and forcefully grabbed Farmer by the arm, shoved [him] and instructed three (3) state police officers to escort Farmer from the building." *Id.* at ¶ 20. Again, assuming these facts to be true, the Court concludes that these allegations reflect Leishear's utter indifference to Farmer's First Amendment rights. *See Barbre*, 402 Md. 157, 187. Accordingly, the Court will not dismiss Farmer's assault and battery claims against Leishear on the basis of state personnel immunity. *See, e.g., id.* at 186 (plaintiff sufficiently alleged malice where officer shot him in the neck while his hands were raised in surrender); *Lee*, 384 Md. at 269-70 (plaintiff sufficiently alleged malice where officer extended traffic stop and called for canine search without justification, yelled at plaintiff, and described plaintiff to dispatcher, without justification, as an "uncooperative suspect"); *Okwa v. Harper*, 360 Md. 161, 182 (Md. 2000) (plaintiff sufficiently alleged malice where arresting officers "beat [plaintiff] about his head and neck while they twisted his

thumbs"); *Sawyer v. Humphries*, 322 Md. 247, 261 (1991) (plaintiff sufficiently alleged malice where officer, unprovoked and without cause, threw rock at plaintiff's vehicle, wrestled him to the ground, grabbed him by hair, and repeatedly hit his face, saying that he was "going to kill" plaintiff).

As for Caspar, however, the Court reaches a different conclusion. It is not enough for Farmer to just "throw in the term 'gross negligence'" or "malice" in his complaint. *Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 170 (Md. 1989). Rather, Farmer must allege facts that, if proven, would amount to gross negligence or actual malice. As discussed *supra* Section III.A.2, Farmer has not done so. Accordingly, the Court will dismiss Farmer's failure to train/supervise without prejudice to his right to amend his complaint to cure this deficiency, if he can do so.

**IV. CONCLUSION**

For the reasons stated above, the Court will GRANT, in part, and DENY, in part, Defendants' motion to dismiss. Specifically, the Court will DENY Defendants' motion as to Counts I, III, IV, and V, and will GRANT Defendants' motion as to Count II and VI. Thus, Defendant Caspar is dismissed from this action II). As for Farmer's Motion to Defer Ruling on Defendants' Motion Pending Discovery, the Court will DENY that motion.

Dated: June 4, 2015 /S/
George J. Hazel
United States District Judge